Please come forward. Good morning, Your Honors. If it pleases the Court, my name is Michael Donahoe. I work for the Federal Defenders of Montana. I'm here on behalf of Mr. Sullivan. I thought it might be useful in beginning this argument to talk about some record references. These I've selected because I think they're kind of important, and they would be in the ER at 144, 210, 154, 157, and 172. If we start with record reference 144, you can see that that's the petition that the State of Montana filed to revoke Mr. Sullivan's status after his home was searched. And in particular, there are entries on that document that indicate that, according to the State, at least in that document, Mr. Sullivan had been on a combination of parole and release by the court. That's the phrasing. And those entries are repeated more than once. Now, if you cut to ER 210, that would be some administrative collection of data about how his sentence was figured out in terms of time and what time was assigned to what and so on. And the importance of that 210 in relation to 144 is that 210 clearly says he was not on parole.  So, Counsel, the thing I'm struggling with in terms of what the nature of his custody status was is under Montana law, the sentencing judge has ultimate authority to issue the sentence. The judge issued a 10-year sentence. So no matter what sort of substatus he was on, parole, conditional release, in custody, it's a 10-year term. So why does all of this matter? Well, it matters because I think his status as a person that's in custody or not in custody is really, really important here. I mean, that's the whole gist of the argument. He was released from a correctional institution, namely the pre-release. And your argument is that that somehow released him from part of his sentence issued by the court, and that's the disconnect I don't understand. Well, I don't know that respectfully, Your Honor, I actually see it that way. I'm just trying to argue practically that when the man was released, he was released into the community. He had to be on some kind of conditional release. Parole, I'll even concede without admitting, just for purposes of argument, the conditional release exists. But you have to be signed up into those programs. You have to be on those conditions. There's nothing in this record that says that Mr. Sullivan was placed on conditional release, that he was signed up under that program, that he initialed all of the conditions.  But at the time that he was found with a weapon, he was under the suspended term of his sentence, and he had conditions imposed by the court. Isn't that correct? Yeah, but I think you default to the suspended term when he's released from the correctional institution. I tried to emphasize in the briefing that Montana is rich in statutory terms. All of those terms are defined by statute, and that you can't mix and match here. Once he's released, he's in the community on conditions. From the time he got released, he had to be on some type of condition, and what I'm saying is that he defaulted to what the court imposed, and that time started to run at that point in time, and it ran well before his home was searched. I'm sympathetic to your argument, but I'm just struggling a bit, because if we agree with you that the DOC lacks authority or the power to conditionally release those committed to its custody, do you have any authority, and that's what I'm looking for, whether you have any authority for your contention that DOC's unlawful release shortens Mr. Sullivan's sentence? No, and respectfully, Your Honor, I think the only thing I can think about there is we need to ask the Montana Supreme Court. They would be the authority to make that determination, and I asked for it in this case and in the other case, in the Voorhees case, both. It's a question that should be answered. So we go to the Montana Supreme Court in terms of the existing law right now, and then I think that takes us back to where Judge Forrest stated from the beginning, and that's State v. Lewis, where the Supreme Court held that sentencing judges have exclusive authority to set sentences. And so I think another time the question comes up again, could any action by DOC alter a judge-set sentence? I understand that you're saying there's no statutory authority maybe for DOC doing what it did, but ultimately hasn't the Supreme Court spoken here? No, Your Honor, I don't think so. But I would beg for a rule that would be cognate to what Your Honor is thinking, and that would be maybe DOC can't lengthen or shorten a term, but they can't change its nature either. Well, can I ask you about parole? Because my understanding is that the department has the authority to parole someone, and that the Montana courts understand parole and conditional release to refer to release from imprisonment by the Board of Pardons and Parole, and the terms suspension and probation to refer to release by the sentencing court. It seems to me that for the two-year prison sentence, Sullivan could have been and was placed in a community corrections facility and then paroled for the remainder of the two-year prison sentence and then served the remaining eight years of probation. Why wasn't that all okay? Because there's nothing in this record that indicates that Mr. Sullivan went on any type of parole. He had nothing to do with the parole board. He never went before the parole board. He never applied for parole. He was never granted parole. His parole was never revoked. He didn't go through that process, which is precisely my point. The executive branch of the government, the DOC, can't step in and function essentially as a junior parole board. There's nothing in the law, in Montana law, that allows for that. Well, the statute that you cited indicates that community corrections facility is limited to one year, and after that, they shall serve the remainder of the sentence under normal probation supervision if applicable. So I think there was some sense that they had to limit the time in the community correctional program and then release him under parole or conditional release or probation. Right. I understand your argument is that it couldn't have been possibly parole or conditional release, so it had to start his probation sentence? Correct. Right. He's in probation status at that point. Serving his suspended time, yes. But that would require us to say then that effectively they shortened the two-year sentence, right, by starting probation early. Yeah, I think there's an expectation of some type of incarceration or management that is other than placement in the community. That's the best answer I can give to that scenario. But in any case, Mr. Sullivan was never on any kind of parole. In fact, he was never signed up on any kind of conditional release either, which would be the remaining record references, and my time's running short here. Do you want to reserve the balance of it? Please. May it please the Court, Tim Tatarka of the District of Montana on behalf of the United States. On January 12th of 2011, Mr. Sullivan was sentenced by the State District Court to a sentence, commitment to the Department of Corrections for a term of 10 years with eight years suspended. That judgment is in the excerpts of the record at page 202. Is your friend across the aisle, is he correct that there's nothing to tell us that in that period of time when Mr. Sullivan was released before the two-year custody term had expired, that he was under no conditions? No, Your Honor, that's not correct. It is true that the statement of conditions isn't listed in the excerpts of the record, but the Court can infer that he was on conditional release from the information that is in the excerpts of the record, particularly excerpts 210 and 211. I think it's an important point to note here that there is something in Montana that's different. There isn't a comparable thing in federal law, which is Montana makes a distinction between a sentence to a term of imprisonment and a sentence to commitment to the custody of the Montana Department of Corrections, and that's at Montana Code 4618-201, subsection 3A and then 3A, 3 and 4. I have a question for you, though, because what you're saying makes it sound like there's some authority or statutory authority or regulatory authority to support the conditional release program, but I'm questioning whether the DOC has statutory or regulatory authority to support this program, given that the phrase conditional release, from at least my review, only appears as a definition of Montana administrative rules and only in reference to youth offenders who are mentally ill in the Montana Code. So where's the authority? Sure. The authority is, so the term, it isn't the term conditional release. You're right. That appears with respect to adult offenders in the administrative rules. The authority comes from Montana Code annotated 531-202, which provides the department with authority. So adult correctional services is defined to include appropriate community-based programs, including, among other things, intensive supervision and other appropriate programs. And then the next section, Section 203, provides rulemaking authority for the department to create those programs. But don't the operational procedures for conditional release only apply to, at least it looks like, to DOC commitments placed in community corrections programs? And Mr. Sullivan wasn't placed in a program, was he? No. So this is another distinction under Montana law. So Montana law, Section 531-202, provides the department authority to create appropriate community-based programming. That is different than Title 53, Chapter 30, which is the Montana Community Corrections Act, which expands the department's authority to contract with local governments and tribal governments for their correctional facilities. So the language there, as Judge Malloy noted below, is a little bit confusing, or at least duplicative. But that is separate authority, and that's what this Court found recently in Voorhees. I recognize that that's not binding on this Court, but that analysis that I just gave you is the same analysis that is applied there, that that community-based programming provides the authority for the rulemaking that is the conditional release program. And there is a reference to that. I guess, is there somewhere you can point to? Are you saying Section 53-1-202 gives you this authority? Oh, it gives the Montana Department of Corrections. Yeah, that's what I mean. It gives the authority? You're extrapolating some from that, are you not? I mean, I'm trying to figure out where it says. Well, 50-3-1-202 includes community-based programming as part of the Montana Department of Corrections. The authority for the placement comes from the sentencing judge. So the section that does the sentencing is 46-18-201, which is a commitment to the custody of the Department of Corrections, and then the Department of Corrections has the authority to do placement within that. And that is clear in Montana law from State v. Strong and State v. Shyock. So let's just hypothetically, if we disagree with you and conclude that the conditional release program was not lawful, what do we do? What should we make of the 303 days that Mr. Sullivan was in the community subject to probation-like supervision? Yeah, it just doesn't gain Mr. Sullivan any ground. And that's an important distinction between this type of case. Shouldn't that be credited to his probation sentence if DOC acted without authority? No, Your Honor. And that is because the sentence by the district judge is unequivocally, and this is an excerpt from the Record 202, a commitment to the Department of Corrections for 10 years with 8 years suspended. The Department of Corrections just had no authority to, and didn't purport to have any authority to change that term. And I understand that, but just looking deep in here, there seems to be some issues here in which the DOC seems like it appears it's acting without any kind of statutory. I really don't think that's the case, Your Honor. But even if it were, it's one thing to say that that made a decision in a case like Voorhees, which was what was actually at issue in that case was the, what conditions the person was under during that period and whether or not a search was reasonable in that period. And that's one thing. And, of course, the Voorhees case, Voorhees court came to a different conclusion about that. But it is quite another thing to say that the DOC actually had the power to shorten his term of imprisonment. Well, I guess one other way to think about this is if the Department made a mistake by releasing Mr. Sullivan for a portion of his in-custody two-year sentence, what is the appropriate remedy for such a mistake? Well, and that's an ironic, it's, this is, there's something sort of ironic about the position that we're in here, where the position that the appellant is arguing is the court should have kept him institutionalized during all that period and the mistake was released into a community. And so I don't, it's hard to say what there is, what the remedy is for being provided more freedom than the appellant argues he was entitled to. But I do want to get back to Judge Sung's point. To make a clear distinction, this was a point of confusion in the opening brief, that the opening brief refers to this subsection four of section 201, which refers to the court's power to refer to someone to a residential program as a condition of the suspended sentence. And then there's a discussion of that in the brief. And that section is not applicable here. It's clear that what the court did was to act under section 201.3a.4, providing, and it does exactly this. It says, you're committed to the Department of Corrections and I'm going to recommend a particular program. And that's at excerpts of the record 203 where the judge says expressly that. And that is in distinction to, and then the judge proceeds to order the conditions of the suspended sentence. And that is, so that is in distinction to ordering, as a part of the suspended sentence, a placement in a residential facility. Thank you. Thank you, Your Honor. I'll give you one minute. Thank you, I appreciate that very much. And I won't take the whole minute. I'm going to leave with a rhetorical question here. And it would be, if you think about this as a legislative function and that the Montana legislature hasn't weighed in on, why would it make sense for the DOC to infer or believe that it had the authority to replicate a parole function or a court function by placing an individual in the community on probation? Both of those options are available. They're both available by statute. That's all guided discretion. You're an inmate when you're on parole. There's no such program as conditional release. Thank you, Your Honors. Thank you. Thank you both for your oral argument presentations. The case of United States of America v. Grady Harold Sullivan, Jr. is submitted.
judges: MURGUIA, FORREST, SUNG